(35 Misc. Rep. 652.)

## LESZYNSKY v. ROSS.

(Supreme Court, Special Term, New York County. August, 1901.)

**1. RESCISSION OF CONTRACT—COMPLAINT.**

The owner of certain stock and a promoter of its sale in a foreign market entered into an agreement that the owner should receive thereunder both stock and cash on its sale. The owner thereafter entered into a second agreement, by which he surrendered to the promoter, for value, his rights under the first. *Held,* that the owner could not rescind the second agreement on allegations that the promoter falsely represented that the first agreement provided that the owner should receive either stock or cash, where the owner also alleges that the agreement was executed by his attorney in fact, and that he never saw it, and had no knowledge of its contents, except as it had been communicated to him.

**2. SAME—MISTAKE AS TO LAW.**

Mistake as to the legal effect of a contract is not actionable fraud available for purposes of setting aside the agreement.

**3. SAME—PRESUMPTIONS.**

It will be presumed, in an action to set aside a contract entered into by the attorney in fact of the plaintiff, that such attorney duly represented to the plaintiff the contents of the agreement.

**4. SAME—FRAUDULENT REPRESENTATIONS.**

A statement of a promoter that he could not sell certain stock unless the owner took it out of a pool in which he had put it, and assigned it to the promoter, does not constitute actionable fraud, where no material conditions then existing were suppressed, it being only the promoter's statement of his judgment as to the situation.

Action by Julius Leszynsky against Charles A. Ross. Demurrer to complaint sustained.

McCarthy & McMahon (Felix H. Levy, of counsel), for plaintiff.
Evarts, Van Cott & Erskine (Sherman Evarts, of counsel), for defendant.

RUSSELL, J. The demurrer to the complaint, if well founded, may save the need of a trial upon the facts, as the strength of the plaintiff's case is carefully stated, and the pleadings free from criticism save as the facts stated may fall short of affording relief. The controversy is between two persons engaged in the floating of mining properties. They made two agreements, somewhat involved in their character; the one dated May 15, 1899, and the other September 13, 1899. The plaintiff seeks to rescind the latter agreement on the ground of fraud of the defendant by which plaintiff was induced to assign his interest in the first agreement. The plaintiff appears to have been the owner of mining properties in Arizona, which were transferred to a corporation with 100,000 shares of stock of £1 par value each, he receiving 75,000 shares for his properties, leaving 25,000 as treasury stock. By the first agreement with the defendant, made in London, the plaintiff requested defendant to market his shares of the stock, and agreed to give him 50,000 shares thereof. It was thereafter provided that the whole 75,000 shares should be placed in a trustee pool, and out of the sales, up to £14,000, £10,000 thereof should be used

to purchase working capital shares of the company at par, and £3,000 should be paid to plaintiff, and £1,000 to the defendant. The plaintiff's shares, in the proportion stated, should not be sold for less than 15 shillings each, and, if they would not bring that sum, the defendant should contribute enough shares to make up such deficiency. One-fourth of all further shares sold were to be applied to buy the remaining working capital shares at par, and thereafter the plaintiff should be paid one-third of the proceeds of sales, and the working capital shares so purchased were to belong to the parties in proportion of one-third to the plaintiff and two-thirds to the defendant. By the second agreement, also made in London, the plaintiff, in consideration of £3,500, £650 of which was paid down, assigned to the defendant all the benefit, estate, and interest he had under the former agreement. The vendor's shares were to be deposited with Seligman Bros., in London, until full payment of the purchase price, and, if not paid by the 1st day of July, 1900, they were to be handed back to the vendor. The last clause in this agreement reads as follows:

"In the event of a part only of the said sums being paid to the vendor on or before the first day of July, one thousand nine hundred, then the obligation of the vendor to assign his interest under the agreement hereinbefore contained shall wholly cease and determine, and all shares deposited in escrow shall be returned to the vendor. And the purchaser will do all such acts and things and sign such documents as may be necessary to revest all interest under the said agreement in the vendor; but all the sums of money paid or to be paid to the vendor under this agreement shall be deemed to be payments to him pro tanto on account of the sums of money payable to him under the said agreement of the fifteenth of May, one thousand eight hundred and ninety-nine."

The allegations of fraud by which the second agreement was obtained are mainly as to the terms or construction of the first agreement. It is asserted that the defendant falsely represented that by such agreement the plaintiff was entitled only to receive £3,000 in cash, or 25,000 shares in stock, and not both, as was provided for. Presumptively, this would be a statement simply of the legal construction of an agreement of some intricacy, for both parties are supposed to know the conditions of an agreement which they mutually sign; and, if either errs as to the legal effect, such error cannot be made the basis of an action for fraud because of a misstatement of the legal construction. Booth v. Dodge, 60 App. Div. 23, 69 N. Y. Supp. 673. The plaintiff seeks to avoid responsibility for such a presumption by the averment that the first agreement was executed on his behalf in London by an attorney in fact; that he "had never seen said agreement, and had no knowledge of its contents and provisions, except as the same had been communicated to him, but did believe that said contract was in terms as the same is written and appears upon the face of said contract." Without any further averments of facts showing a contrary inference, the silent presumption from this language would be that the contents and provisions of the instrument had been communicated to the plaintiff by his own attorney, pursuant to a presumed duty, and that the belief that the terms of the contract were as they now ap-

pear upon its face came to the plaintiff from such information communicated to him by his attorney. Therefore, from such averment and inference, the conclusion follows that he did know the actual terms of the contract, and, in the absence of excusing statements of fact, had no right whatever to rely upon the assertions of the party seeking to obtain his interest, and who was then, at least, dealing with him at arm's length. But the very contract which he did sign in September, assigning his interest to defendant, negatives his own assertion that he was misled. It shows that his right in the original contract was not an alternative one of stock or cash, but an unquestioned right to both. The section of the second contract, which has been quoted, provides for the reversion to the plaintiff, in case the purchase price of the second contract was not fully paid by the defendant of plaintiff's shares of stock secured by the original agreement, and also an application of the sums paid towards the purchase to the liquidation of the cash the plaintiff was to receive under such original contract. It is therefore plain that an agreement providing for a return of stock and cash under the rights secured by the first agreement could not have been obtained by any fraudulent statement that such first agreement only gave the alternative of stock or cash.

The further allegation in the complaint of the statement that it would be impossible for defendant to accomplish anything unless plaintiff would take the stock out of the pool, and assign the same to the defendant, is not a misrepresentation of fact, when unaccompanied by any averments showing a suppression of material conditions which the plaintiff had a right to know. It is a mere statement of the judgment of the defendant as to the situation, and such an opinion could not be made the basis of fraud. Gordon v. Butler, 105 U. S. 553, 26 L. Ed. 1166; Holbrook v. Connor, 60 Me. 578, 11 Am. Rep. 212. Judgment is directed for the defendant sustaining the demurrer, with costs, with leave to amend within 20 days on payment of costs.

Demurrer sustained, with costs, with leave to amend within 20 days on payment of costs.